Nos. 15-16178, 15-16181, 15-16250

IN THE

# United States Court of Appeals for the Ninth Circuit

_____

| | |
|---|---|
| ABDUL KADIR MOHAMED,<br>Plaintiff-Appellee,<br>v.<br>UBER TECHNOLOGIES, INC., *et al.*,<br>Defendants-Appellants. | No. 15-16178<br>No. C-14-5200 EMC<br>N. Dist. Cal., San Francisco<br>Hon. Edward M. Chen presiding |
| RONALD GILLETTE,<br>Plaintiff-Appellee,<br>v.<br>UBER TECHNOLOGIES, INC.,<br>Defendant-Appellant. | No. 15-16181<br>No. C-14-5241 EMC<br>N. Dist. Cal., San Francisco<br>Hon. Edward M. Chen presiding |
| ABDUL KADIR MOHAMED,<br>Plaintiff-Appellee,<br>v.<br>HIREASE, LLC,<br>Defendant-Appellant. | No. 15-16250<br>No. C-14-5200 EMC<br>N. Dist. Cal., San Francisco<br>Hon. Edward M. Chen presiding |

## APPELLANTS' JOINT OPENING BRIEF

JOSHUA S. LIPSHUTZ
KEVIN J. RING-DOWELL
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:    415.393.8306

THEODORE J. BOUTROUS, JR.
THEANE D. EVANGELIS
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Ave.
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:    213.229.7520

*Counsel for Defendants-Appellants Uber Technologies, Inc. and Rasier, LLC*
*[Additional Counsel Listed on Inside Cover]*

PAMELA Q. DEVATA
NICHOLAS R. CLEMENTS
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone: 415.397.2823
Facsimile:  415.397.8549

TIMOTHY L. HIX
SEYFARTH SHAW LLP
333 S. Hope Street, Suite 3900
Los Angeles, CA 90071
Telephone: 213.270.9600
Facsimile:  213.270.9601

*Counsel for Defendant-Appellant Hirease, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Uber Technologies, Inc., and Rasier, LLC, hereby file their corporate disclosure statement as follows. Uber Technologies, Inc. is a privately held corporation. No parent corporation or publicly held corporation owns 10% or more of its stock. Rasier, LLC is a wholly-owned subsidiary of Uber Technologies, Inc.

Dated: October 21, 2015

Respectfully submitted,

_/s/ Theodore J. Boutrous, Jr._

Theodore J. Boutrous, Jr.
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

_Attorney for Defendants-Appellants Uber Technologies, Inc. and Rasier, LLC_

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Hirease, LLC, hereby files its corporate disclosure statement as follows. Defendant-Appellant Hirease, LLC is fully owned by Irvine, CA-based Accurate Background, LLC. Accurate Background, LLC is not a publically traded corporation. Therefore, no publicly-held corporation owns any of Hirease, LLC's stock.

Dated: October 21, 2015                    Respectfully submitted,

                                    _____*/s/ Timothy L. Hix*_____

                                    Timothy L. Hix
                                    SEYFARTH SHAW LLP
                                    333 S. Hope Street, Suite 3900
                                    Los Angeles, CA  90071
                                    Telephone: 213.270.9600
                                    Facsimile:  213.270.9601

                                    *Attorney for Defendant-Appellant*
                                    *Hirease, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION..........................................................6

STATEMENT OF ISSUES ......................................................................6

STATEMENT OF THE CASE...................................................................7

     A.  The Uber Software Application ...................................................9

     B.  Rollout Of The 2013 Licensing Agreement...............................10

     C.  The 2013 Licensing Agreement .................................................11

     D.  The *O'Connor* Action ...............................................................13

     E.  The District Court's Redrafting Of The Arbitration Provision.................15

     F.  The 2014 Agreements .................................................................17

     G.  The *Mohamed* and *Gillette* Actions .........................................19

     H.  The District Court's Order Denying Uber's Motions to Compel Arbitration in *Mohamed* and *Gillette* .........................................20

     I.  Subsequent District Court Findings Pertaining To The Arbitration Provisions. ...............................................................23

STANDARD OF REVIEW .....................................................................24

SUMMARY OF THE ARGUMENT .......................................................25

ARGUMENT ..........................................................................................27

I.  The Arbitration Provisions Cannot Be Procedurally Unconscionable Because Drivers Could, And Did, Opt Out Of Arbitration. ...........................28

II.  Neither The Cost-Splitting Provision, Nor Any Other Provision, Renders The Arbitration Agreements Substantively Unconscionable. ...........37

     A.  The Cost-Splitting Provision Is Not Unconscionable. ...............38

iv

B.   No Other Provision Is Substantively Unconscionable. .............................44

III. An Arbitrator Should Decide The Enforceability Of The Arbitration Provisions. .......................................................................................50

IV. Non-Signatory Hirease May Compel Plaintiff Mohamed To Arbitration ........56

CONCLUSION .................................................................................58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
  66 Cal. App. 4th 1199 (1998)..................................................................48

*Alvarez v. T-Mobile USA, Inc.*,
  2011 WL 6702424 (E.D. Cal. Dec. 21, 2011)......................................32

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) .............................................................. 1, 4, 27

*Ambler v. BT Ams. Inc.*,
  964 F. Supp. 2d 1169 (N.D. Cal. 2013) ...........................................43

*Anderson v. Pitney Bowes, Inc.*,
  2005 WL 1048700 (N.D. Cal. May 4, 2005) ......................................51

*Andrade v. P.F. Chang's China Bistro, Inc.*,
  2013 WL 5472589 (S.D. Cal. Aug. 9, 2013) ......................................45

*Appelbaum v. AutoNation, Inc.*,
  2014 WL 1396585 (C.D. Cal. Apr. 8, 2014).......................................42

*Arellano v. T-Mobile USA, Inc.*,
  2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ....................................32

*Ariza v. Autonation, Inc.*,
  317 F. App'x 662 (9th Cir. 2009)........................................................51

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000)........................................ 26, 39, 40, 41, 42, 46, 50

*Aron v. U-Haul Co. of Cal.*,
  143 Cal. App. 4th 796 (2006)..............................................................28

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  612 F. App'x 430 (9th Cir. 2015).......................................................47

*AT&T Mobility, LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ....................................................................... 1, 27, 39, 40

*Barapind v. Enomoto*,
   400 F.3d 744 (9th Cir. 2005) ................................................................32

*Beard v. Santander Consumer USA, Inc.*,
   2012 WL 1292576 (E.D. Cal. Apr. 16, 2012)
   *report & rec. adopted*, 2012 WL 1576103 (E.D. Cal. May 3, 2012) .................40

*Bernal v. S.W. & Pac. Specialty Fin., Inc.*,
   2014 WL 1868787 (N.D. Cal. May 7, 2014) ......................................................51

*Bigler v. Harker Sch.*,
   213 Cal. App. 4th 727 (2013).................................................................43

*Blair v. Scott Specialty Gases*,
   283 F.3d 595 (3d Cir. 2002) .................................................................43

*Boghos v. Certain Underwriters at Lloyd's of London*,
   36 Cal. 4th 495 (2005).................................................................... 54, 55

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...............................................................50

*Briceno v. Scribner*,
   555 F.3d 1069 (9th Cir. 2009).................................................................32

*Burgoon v. Narconon of N. Cal.*,
   2015 WL 5071982 (N.D. Cal. Aug. 27, 2015)....................................................43

*Carter v. Countrywide Credit Indus., Inc.*,
   362 F.3d 294 (5th Cir. 2004).................................................................43

*Chung v. Nemer PC*,
   2012 WL 5289414 (N.D. Cal. Oct. 25, 2012)....................................................51

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002)................................................. 3, 21, 23, 29, 31, 32

*City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002)................................................. 3, 22, 23, 29, 31, 32

*Cobb v. Ironwood Country Club*,
    233 Cal. App. 4th 960 (2015) ............................................................. 48

*Collins v. Diamond Pet Food Processors of Cal., LLC*,
    2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) ................................... 42

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ........................................................... 24

*Dauod v. Ameriprise Fin. Servs., Inc.*,
    2011 WL 6961586 (C.D. Cal. Oct. 12, 2011) ................................... 49

*Davis v. O'Melveny & Myers*,
    485 F.3d 1066 (9th Cir. 2007) ........................................................... 29

*Dean Witter Reynolds, Inc. v. Superior Court*,
    211 Cal. App. 3d 758 (1989) ............................................................. 28

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996) .......................................................................... 39

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ........................................................... 50

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) ..................................................... 54, 55

*EEOC v. Woodmen of World Life Ins. Soc.*,
    479 F.3d 561 (8th Cir. 2007) ............................................................. 43

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014) ......................................... 47

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) ............................................................. 55

*Farrow v. Fujitsu Am., Inc.*,
    37 F. Supp. 3d 1115 (N.D. Cal. 2014) .............................................. 45

*Gentry v. Superior Court*,
    42 Cal. 4th 443 (2007) ................................................. 31, 32, 33, 34

viii

*Gilbert v. Bank of Am.*,
2015 WL 1738017 (N.D. Cal. Apr. 8, 2015) ......................................................35

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209 (2009)..............................................................................56

*Gospel Missions of Am. v. City of L.A.*,
328 F.3d 548 (9th Cir. 2003)..............................................................................13

*Guadagno v. E\*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008).............................................................32

*Hall v. Fedex Freight, Inc*.,
2014 WL 3401386 (E.D. Cal. July 11, 2014) .....................................................35

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001).............................................................................31

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
2014 WL 10100283 (C.D. Cal. Nov. 26, 2014).................................................55

*Hodsdon v. Bright House Networks, LLC*,
2013 WL 1091396 (E.D. Cal. Mar. 15, 2013) ...................................................32

*Hoffman v. Citibank (South Dakota) N.A.*,
546 F.3d 1078 (9th Cir. 2008)............................................................................29

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*,
194 Cal. App. 4th 704 (2011)..............................................................................45

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009)........................................................................36

*In re WorldCom, Inc. Sec. Litig.*,
2005 WL 1048073 (S.D.N.Y. May 5, 2005).......................................................36

*Iskanian v. CLS Transp. L.A., LLC*,
59 Cal. 4th 348 (2014)........................................................................ 22, 48, 49

*James v. Conceptus, Inc*.,
851 F. Supp. 2d 1020 (S.D. Tex. 2012) .............................................................40

*Johnston Boiler Co. v. Local Lodge No. 893*,
    753 F.2d 40 (6th Cir. 1985) ...................................................................51

*Jones v. Jacobson*,
    195 Cal. App. 4th 1 (2011) ................................................................56

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) .................................................. *passim*

*King v. Hausfeld*,
    2013 WL 1435288 (N.D. Cal. Apr. 9, 2013) .....................................32

*Large v. Conseco Fin. Servicing Corp.*,
    292 F.3d 49 (1st Cir. 2002) .................................................................43

*Lee v. Am. Express Travel Related Servs., Inc.*,
    348 F. App'x 205 (9th Cir. 2009).........................................................49

*Livingston v. Assocs. Fin., Inc.*,
    339 F.3d 553 (7th Cir. 2003)................................................................43

*Marshall v. Pontiac*,
    287 F. Supp. 2d 1229 (S.D. Cal. 2003) ..............................................41

*McIntosh v. Adventist Health/W. St. Helena Hosp.*,
    2013 WL 968293 (N.D. Cal. Mar. 12, 2013) .....................................43

*Mendoza v. Ad Astra Recovery Servs. Inc.*,
    2014 WL 47777 (C.D. Cal. Jan. 6, 2014)...........................................32

*Meyer v. T-Mobile USA Inc.*,
    836 F. Supp. 2d 994 (N.D. Cal. Sept. 23, 2011) ................................32

*MHN Gov't Servs., Inc. v. Zaborowski*,
    2015 WL 3646800 (Oct. 1, 2015) ......................................................44

*Michalski v. Circuit City Stores, Inc.*,
    177 F.3d 634 (7th Cir. 1999)....................................................... 29, 30

*Mill v. Kmart Corp.*,
    2014 WL 6706017 (N.D. Cal. Nov. 26, 2014).............................. 32, 42

*Mohamed v. Uber Techs., Inc.*,
No. 15-16178, ECF No. 10 (9th Cir.)................................................ 13, 18, 19, 48

*Monex Deposit Co. v. Gilliam*,
671 F. Supp. 2d 1137 (C.D. Cal. 2009).................................................35

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005)...............................................................28

*Morvant v. P.F. Chang's China Bistro, Inc.*,
870 F. Supp. 2d 831 (N.D. Cal. 2012) ................................................45

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................................................................... 2, 25, 27

*Muriithi v. Shuttle Express, Inc.*,
712 F.3d 173 (4th Cir. 2013) ..................................................................42

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006)................................................................29

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)................................................................54

*Owen ex rel. Owen v. United States*,
713 F.2d 1461 (9th Cir. 1983) ...............................................................31

*Parada v. Superior Court*,
176 Cal. App. 4th 1571 (2009)...............................................................35

*Pearson Dental Supplies, Inc. v. Superior Court*,
48 Cal. 4th 665 (2010)...................................................................... 39, 42

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013)...............................................................48

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012)..................................................................... 25, 28, 38

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010)..................................................................37

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................... 21, 52

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
    55 Cal. 4th 1169 (2013) ............................................................................. 49

*Roman v. Superior Court*,
    172 Cal. App. 4th 1462 (2009) ..................................................... 5, 26, 38, 43, 44

*Saincome v. Truly Nolen*,
    2011 WL 3420604 (S.D. Cal. Aug. 3, 2011) ........................................................ 42

*Sakkab v. Luxottica Retail North America*,
    2015 WL 5667912 (9th Cir. Sept. 28, 2015) ....................................................... 48

*Sanchez v. Valencia Holding, Co.*,
    61 Cal. 4th 899 (2015) ............................................................... 35, 36, 37, 46, 47

*Securitas Sec. Servs. USA, Inc. v. Superior Court*,
    234 Cal. App. 4th 1109 (2015) .................................................................... 48

*Serafin v. Balco Props. Ltd.*,
    235 Cal. App. 4th 165 (2015) ..................................................................... 48

*Serpa v. Cal. Sur. Inv., Inc.*,
    215 Cal. App. 4th 695 (2013) ..................................................................... 47

*Slaughter v. Stewart Enters., Inc.*,
    2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) ......................................................... 47

*Smith v. Ford Motor Co.*,
    462 F. App'x 660 (9th Cir. 2011) .................................................................. 28

*Swarbrick v. Umpqua Bank*,
    2008 WL 3166016 (E.D. Cal. Aug. 5, 2008) .................................................. 32, 39

*Thomas v. Westlake*,
    204 Cal. App. 4th 605 (2012) ...................................................................... 56

*Ticknor v. Choice Hotels Int'l, Inc.*,
    265 F.3d 931 (9th Cir. 2001) ...................................................................... 25

*Toledano v. O'Connor*,
    501 F. Supp. 2d 127 (D.D.C. 2007) ....................................................40

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ....................................45

*Ulbrich v. Overstock.com, Inc.*,
    887 F. Supp. 2d 924 (N.D. Cal. Aug. 15, 2012)..................................43

*United States v. Maybusher*,
    735 F.2d 366 (9th Cir. 1984) ..............................................................32

*United States v. Northrop Corp.*,
    59 F.3d 953 (9th Cir. 1995) ................................................................40

*Unites States v. Gonzalez-Zotelo*,
    556 F.3d 736 (9th Cir. 2009) ..............................................................32

*Universal Prot. Serv., L.P. v. Superior Court*,
    234 Cal. App. 4th 1128 (2015)............................................................51

*Velazquez v. Sears, Roebuck & Co.*,
    2013 WL 4525581 (S.D. Cal. Aug. 26, 2013) ............................ 32, 45

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
    51 F. Supp. 3d 713 (N.D. Ill. 2014)....................................................55

*West v. Henderson*,
    227 Cal. App. 3d 1578 (1991) ............................................................49

*Zaborowski v. MHN Gov't Servs., Inc.*,
    601 F. App'x 461 (9th Cir. 2014)........................................................44

*Zenelaj v. Handybrook, Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015)..................................................51

**Statutes**

9 U.S.C. § 16.................................................................................................6

15 U.S.C. § 1681 ..........................................................................................6

28 U.S.C. § 1331 ..........................................................................................6

28 U.S.C. § 1332 ...................................................................................6

28 U.S.C. § 1367 ...................................................................................6

California Civil Code § 1786 ................................................................19

California Labor Code § 226.8 ..............................................................8

California Labor Code § 351 ................................................................14

California Labor Code § 2698 ...............................................................7

California Labor Code § 2802 ..............................................................14

**Rules**

Fed. R. Civ. P. 23(d) ......................................................................14, 23

**Other Authorities**

Anthony S. Volpe & Linda X. Shi, *What to Consider Before Agreeing to an IP Arbitration*, The Legal Intelligencer, Vol. 243 No. 35 (Feb. 22, 2011).........46

## INTRODUCTION

In these nationwide putative class actions and the related *O'Connor* litigation, drivers who use the Uber software application are seeking a judicial determination that they are Uber employees, as well as damages for alleged violations of the Fair Credit Reporting Act ("FCRA") and various state credit and consumer background reporting laws. Unlike hundreds of other drivers that use Uber, however, the plaintiffs in these cases signed licensing agreements containing binding arbitration provisions and did *not* exercise their right to opt out of arbitration. By accepting (and not opting out of) the arbitration provisions, these plaintiffs expressly waived their right to litigate in court and to participate in class actions and representative actions—precisely the types of claims they are seeking to adjudicate in the district court.

The Federal Arbitration Act ("FAA") was enacted to put an end to "judicial hostility to arbitration," *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013), by adopting a "liberal federal policy *favoring* arbitration." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (emphasis added). "[A]s a matter of federal law," federal courts are instructed to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is [one of] the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The district court's order denying Uber's motions to compel arbitration and refusing to enforce the plaintiffs' class action waivers repeatedly defies these governing principles, taking every opportunity to *disfavor* arbitration and resolving every question of fact and law *against* enforcement of the arbitration provisions at hand—both the 2013 arbitration agreement at issue in *Gillette* and the 2014 arbitration agreement at issue in *Mohamed* (together, the "Arbitration Provisions"). Here are just a few examples:

- The district court forced Uber to revise its 2013 Arbitration Provision by incorporating extensive supplemental disclosures about arbitration; emphasizing the arbitration provisions using bold, underlined, and oversized font; and expanding the range of opt-out mechanisms to include email. Appellants' Joint Request for Judicial Notice ("RJN") Ex. C at 11; *id.*, Ex. F at 12-14; *id.*, Ex. H at 6. The district court even line-edited portions of Uber's Arbitration Provision itself. *Id.*, Ex. H. And Uber complied with all of these unnecessary changes, expending substantial resources disseminating the new, court-approved 2014 Arbitration Provision to hundreds of thousands of drivers and, at the court's command, providing drivers with a renewed opportunity to opt out of arbitration.

Yet, in an unprecedented act of hostility towards arbitration, the district court *still* found Uber's Arbitration Provisions—both the 2013 version that *Uber* drafted and the 2014 version the *district court* drafted and approved—to be unconscionable and unenforceable.  Excerpts of Record ("ER") 3, 69-70.

•   The district court found both the 2013 and 2014 Arbitration Provisions to be procedurally unconscionable even though it is undisputed that *hundreds* of drivers opted out of those agreements.  Under binding Ninth Circuit case law, including an en banc decision from 2013, a meaningful opportunity to opt out *precludes* any finding of procedural unconscionability and therefore *requires* enforcement of the Arbitration Provisions.  *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).  The district court acknowledged the holdings of those cases.  *See* ER 34 ("It cannot be denied that each of the cited decisions stand for the precise proposition of law that Uber advocates.").  Yet it refused to follow them, expressing instead its disagreement with this Court's analysis.   ER 36 ("*Kilgore* presents an inaccurate picture of California law").

•   The district court found Uber's Arbitration Provisions to be "oppressive" based on an erroneous belief that drivers who use Uber are "lower-

3

level laborer[s]" who "may feel pressure to appease their putative employer by assenting to" arbitration. ER 39. But there is absolutely *no* evidence in the record to support that incorrect finding. In fact, the district court subsequently acknowledged that a "reasonably sizeable portion of . . . drivers may *not* face . . . general economic pressure to assent to Uber's arbitration agreements" because they are *not* "economically dependent on Uber for their livelihoods." RJN, Ex. L at 62 (emphasis added). Moreover, the Supreme Court has instructed that federal courts, in determining whether an arbitration agreement is enforceable, must *not* "tally the costs and burdens [of arbitration] to particular plaintiffs in light of their means"—precisely what the district court did. *Italian Colors Rest.*, 133 S. Ct. at 2311-12.

• The district court found the 2013 Arbitration Provision, as well as the delegation clause contained in both the 2013 and 2014 Arbitration Provisions, to be substantively unconscionable based on a cost-sharing provision that, in the district court's view, would require drivers to pay "exorbitant" fees just to access the arbitral forum. ER 40. But *another* provision provides that "in all cases where required by law, *Uber* will pay the Arbitrator's and arbitration fees." ER 158, 212 (§ 14.3.vi (emphasis added)). It also ignored the applicable arbitral rules, which substantially limit the amount drivers can be forced to pay to access arbitration.

4

*See* RJN, Ex. N.  And it ignored California law and the FAA, both of which require courts to excise unconscionable fee-sharing provisions, not use them as a basis for declaring the entire arbitration agreement invalid.  *See, e.g.*, *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009).

- The district court acknowledged that the delegation clause contained in the 2013 and 2014 Arbitration Provisions is clear and unmistakable, delegating threshold issues of arbitrability to an arbitrator.  ER 16 ("Plaintiffs do not appear to contend that the language of the delegation clauses itself is ambiguous, and such an argument would be a tough sell.")).  Yet the court refused to enforce the delegation clause anyway, arrogating to itself the power to determine unconscionability—and then declared both agreements to be unconscionable.  ER 23, 32, 40.  It did so based on supposedly confusing provisions found *elsewhere* in Uber's licensing agreements, even though those provisions are easily reconcilable with the delegation clause using standard tools of contract interpretation.  ER 16-23.

In short, the district court erred at nearly every step of its analysis, refusing to enforce valid Arbitration Provisions based on sheer hostility toward arbitration and manifestly erroneous factual and legal conclusions.  Uber respectfully requests that this Court reverse the district court and compel arbitration in both the *Gillette* and *Mohamed* actions.

## STATEMENT OF JURISDICTION

The district court has jurisdiction over these actions pursuant to 28 U.S.C. § 1331 because Plaintiffs in both actions assert claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The district court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367. Moreover, the district court has jurisdiction over the *Mohamed* action pursuant to 28 U.S.C. § 1332(d)(2) because the putative class consists of more than 100 members, including one or more members with citizenship diverse from Appellants, and the amount in controversy exceeds $5 million.

This Court has jurisdiction to hear the appeals pursuant to 9 U.S.C. § 16(a)(1)(C) because the district court denied Appellants' motions to compel arbitration in both actions. *See generally* ER 1-70.

The district court issued its order denying Appellants' motions to compel arbitration on June 9, 2015, Uber filed timely notices of appeal on June 11, 2015, and Hirease filed its timely notice of appeal on June 22, 2015. *See* ER 79, 81, 86.

## STATEMENT OF ISSUES

1. Whether the existence of a meaningful opt-out provision, which many drivers utilized to opt out of arbitration, precludes a finding of procedural unconscionability, as this Court already held in a 2013 en banc decision and in multiple other panel decisions.

2. Whether the court should enforce an arbitration agreement containing several provisions—a cost-sharing provision, a confidentiality clause, an Intellectual Property ("IP") carve-out, a modification clause, and a waiver of representative actions asserted under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698—that this Court and other courts have repeatedly found to be conscionable and enforceable and which, in any event, could (if necessary) be severed from the arbitration agreement in accordance with California law.

3. Whether the court should enforce a clear and unmistakable delegation provision that delegates *most* gateway issues of arbitrability to an arbitrator in unambiguous terms, notwithstanding provisions elsewhere in the arbitration agreement that reserve court jurisdiction over *other* gateway issues.

## STATEMENT OF THE CASE

These consolidated appeals arise from two putative class actions, in which drivers who use the Uber smartphone application allege that Uber Technologies, Inc. ("Uber") has violated FCRA and related state credit and consumer background reporting laws by obtaining consumer credit and background reports of drivers without providing advance notice, obtaining drivers' authorization, or providing drivers with copies of the reports. Plaintiff Gillette also asserts a PAGA representative action alleging a variety of California Labor Code violations,

including a claim that Uber has willfully misclassified drivers as independent contractors (rather than employees), in violation of California Labor Code § 226.8.[1]

Although the plaintiffs in these cases accepted Arbitration Provisions requiring them to arbitrate all "disputes arising out of or related to . . . [their] relationship[s] with Uber, including termination of [those] relationship[s]" and requiring them to bring claims against Uber "on an individual basis only, and not on a class, collective or private attorney general representative action basis," the district court refused to enforce the parties' arbitration agreements and denied Uber's motions to compel arbitration.

The two Arbitration Provisions at issue in these nationwide putative class actions—the 2013 Arbitration Provision that plaintiff Gillette accepted and the 2014 Arbitration Provision that plaintiff Mohamed accepted—are virtually identical except in one respect: The 2013 Arbitration Provision contains an opt-out provision that *Uber* drafted before the commencement of this litigation and the related *O'Connor* litigation, whereas the 2014 Arbitration Provision contains an

---

[1] Hirease, LLC ("Hirease") is a consumer reporting agency with whom Uber contracted for services. Plaintiff Mohamed—but not plaintiff Gillette—named Hirease as a defendant in the district court action below. Hirease filed a joinder to Uber's motion to compel arbitration in *Mohamed*. *See* ER 124. For simplicity, this brief will refer to Uber and Hirease collectively as "Uber."

opt-out provision that the *district court* drafted, approved, and required Uber to disseminate to drivers. Hundreds of drivers have opted out of arbitration with Uber under both the 2013 and 2014 agreements, but the plaintiffs in these cases did not.

Notwithstanding its participation in drafting the 2014 Arbitration Provision, the district court found *both* the 2013 and 2014 Arbitration Provisions to be procedurally and substantively unconscionable. The district court issued a single order denying Uber's motions to compel arbitration in both cases, relying on much of the same reasoning and the same case law for both denials. ER 1-70.

## A. The Uber Software Application

Uber is a technology company that connects individuals in need of rides ("riders") with independent transportation providers searching for passengers ("drivers"). ER 187-88. Uber provides the technology through a smartphone application (the "App"), which Uber licenses to drivers pursuant to a software licensing agreement ("Licensing Agreement") and a Driver Addendum Related to Uber Services ("Driver Addendum"). *Id.* Drivers who use the App's uberX platform[2] are also required to accept an agreement called the Transportation

---

[2] The uberX platform connects riders to vehicles operated by private individuals (i.e., "ridesharing" services) as well as vehicles operated by transportation companies. ER 137. Other relevant platforms include UberBLACK, which

Provider Service Agreement (the "Rasier Agreement") with Uber's wholly-owned subsidiary, Rasier, LLC ("Rasier") (together with Uber, "Uber"), in lieu of or in addition to a Licensing Agreement and Driver Addendum. ER 137, 140. On occasion, Uber implements updated versions of these agreements, which drivers must accept in order to access or continue to access the App. ER 188.

### B. Rollout Of The 2013 Licensing Agreement

On July 23, 2013, Uber sent an email to drivers, which stated that Uber intended to roll out an updated Licensing Agreement and Driver Addendum, and also included a hyperlink to the updated agreements. ER 188. Shortly thereafter, Uber rolled out the updated Licensing Agreement (the "2013 Licensing Agreement") and Driver Addendum. ER 188-89. When drivers logged onto the App, they were presented with a notification window that (1) advised them that Uber had updated these agreements; and (2) provided links to the agreements. *Id.* Drivers were required to click a "Yes, I agree" button indicating that they accepted the updated agreements in order to continue using the App. *Id.* A second notification window then appeared asking drivers to confirm that they had

---

connects riders to limousines and town cars operated by transportation companies, and UberSUV, which connects riders to luxury sport utility vehicles operated by transportation companies. *See id.*

10

reviewed the agreements, and drivers were again required to click a "Yes, I agree" button to access the App. *Id*.

### C. The 2013 Licensing Agreement

Uber made several changes to its then-existing Licensing Agreement when it rolled out the 2013 Licensing Agreement, including the addition of the Arbitration Provision. ER 209 (§ 14.3). The Arbitration Provision in the 2013 Licensing Agreement appears under a bolded, underlined heading entitled "**Arbitration**," and contains a standalone delegation provision, which states as follows:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

ER 209-10 (§ 14.3.i). The Arbitration Provision also requires the parties to assert claims "on an individual basis only," and not in a class, collective, or private attorney general capacity (the "Waiver Provisions"). ER 211 (§ 14.3.v).

Under a standalone, underlined subheading entitled "Paying For The Arbitration," the Arbitration Provision provides that "in all cases where required by law, Uber will pay the Arbitrator's and arbitration fees." ER 212 (§ 14.3.vi). It

further specifies that "[i]f under applicable law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." *Id.*

Additionally, the 2013 Arbitration Provision states, under a separate subheading entitled "Your Right To Opt Out Of Arbitration," that arbitration "is not a mandatory condition of [drivers'] contractual relationship with Uber," and that drivers "may opt out of [the] Arbitration Provision by notifying Uber in writing of [their] desire to opt out . . . ." ER 212 (§ 14.3.viii). In bolded font, the opt out provision provides that any opt-out "**must be post-marked within 30 days**" of the date of acceptance and may be delivered to Uber either by hand delivery or overnight mail delivery service. *Id.* It further states that drivers "have the right to consult with counsel of [their] choice concerning [the] Arbitration Provision" and reiterates that drivers "will not be subject to retaliation if [they] exercise [their] right to . . . opt-out of coverage under [the] Arbitration Provision." *Id.* It is undisputed that many drivers—including the plaintiffs in the

*O'Connor* litigation—opted out of the 2013 Arbitration Provision using the opt-out procedure set forth above.[3]

### D. The *O'Connor* Action

On August 16, 2013—*after* Uber had rolled out the 2013 Licensing Agreement and updated Driver Addendum—two drivers filed a putative class action against Uber and two of its executive officers, captioned *O'Connor v. Uber Technologies, Inc.*, No. 13-03826-EMC. The *O'Connor* plaintiffs alleged, *inter alia*, that drivers who use the Uber App are Uber's employees, rather than independent contractors, and are thus entitled to reimbursement of expenses under

---

[3] In its order denying Uber's motion to compel arbitration, the district court stated that "Uber presented no evidence to this Court that even a single driver opted-out of the 2013 Agreement's arbitration clause." ER 26. That statement was clearly erroneous. In fact, the court had before it a hearing transcript, submitted by Uber, describing the undisputed fact that the named plaintiffs in *O'Connor* (a related case pending before the same district judge) opted out of the 2013 Agreement. ER 123. Indeed, the *Gillette* and *Mohamed* plaintiffs have never disputed the fact that drivers opted out of the 2013 agreement. To the contrary, they recently stated, in a filing with this Court, that "hundreds of . . . drivers[] opted out of the [2013] arbitration agreement." *See* Consolidation Opp'n at 6-7, *Mohamed v. Uber Techs., Inc.*, No. 15-16178, ECF No. 10 (9th Cir.); *see also Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) (statements made in briefs may be binding judicial admissions). In any event, there is no question that many drivers did opt out of the 2013 Arbitration Provision. RJN, Ex. M at 7-8 (*O'Connor* ECF No. 356 at 7-8), *id.* at 25-27 (*O'Connor* ECF No. 356-1 at 3-5) (providing a list of dozens of drivers who opted out of the 2013 agreement). And the district court subsequently clarified that its erroneous factual finding had no bearing on its decision. *See* ER 77 (the fact that hundreds of drivers opted out "does not undercut this Court's legal conclusion").

California Labor Code § 2802 and allegedly unremitted gratuities under California Labor Code § 351. RJN, Ex. A at 9.

Five days later, the *O'Connor* plaintiffs filed an emergency motion for a protective order, in which they asked the district court to find that the Arbitration Provision in the 2013 Licensing Agreement was unconscionable or, alternatively, to require Uber to (1) send a notice to putative class members about the *O'Connor* action; and (2) afford putative class members a renewed opportunity to opt out of arbitration. RJN, Ex. B. The plaintiffs argued that the court could grant this relief by exercising its authority to regulate communications with putative class members under Rule 23(d) of the Federal Rules of Civil Procedure. *Id.* at 6-7.

In its ruling, the district court deferred consideration of whether the Arbitration Provision was enforceable, but granted, in part, plaintiffs' alternative request for relief. RJN, Ex. C. Even though Uber issued the 2013 Licensing Agreement (and the Arbitration Provision therein) before *O'Connor* was filed, and even though many of the individuals to whom Uber sent the 2013 Licensing Agreement were merely *prospective* drivers (*i.e.*, not putative class members), the Court found that the Arbitration Provision threatened to "adversely affect[] [drivers'] rights" and ordered Uber to give drivers "clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in [the]

14

[*O'Connor*] lawsuit, and reasonable means of opting out of the arbitration provision within 30 days of the notice." *Id.* at 9, 11. The court further ordered Uber not to distribute any Licensing Agreement containing an Arbitration Provision without prior court approval, and directed the parties to submit proposed corrective notices and a revised Licensing Agreement consistent with the court's order. *Id.* at 11-12.

### E. The District Court's Redrafting Of The Arbitration Provision

Following the district court's ruling, the *O'Connor* parties submitted proposed corrective notices and Uber submitted a revised Licensing Agreement for the district court's review. RJN, Exs. D, E. The district court found that Uber's corrective notice gave adequate "notice . . . that a New Licensing Agreement [would] ensue, that actions against Uber [were] pending . . . , and that assenting to the New Licensing Agreement preclude[d] participation in . . . lawsuits against Uber." *Id.*, Ex. F at 12. It also found that Uber's proposed Licensing Agreement gave "clear notice of the arbitration provision." *Id*. Yet the court nonetheless ordered Uber to submit another revised corrective notice and Licensing Agreement with a more "fair" opt out procedure. *Id.* at 12, 15. Once more, the district court emphasized that, in its view, the mere distribution of Uber's Arbitration Provision—which was "rolled out" *before* the *O'Connor* action was even filed—

15

"jeopardize[d] the fairness of the litigation" and required the district court to intervene in order "to protect [putative] class members . . . ." *Id.* at 4, 7.

Uber then submitted two revised corrective notices and a revised Licensing Agreement, *see* RJN, Ex. G, which, according to the district court, gave drivers "a reasonable means of opting out—sending a letter by U.S. mail," and afforded drivers "a renewed opportunity to opt out." *Id.*, Ex. H at 4. Nonetheless, the court imposed a number of additional edits, ordering Uber to: (1) bold the paragraph in its Arbitration Provision describing the opt out procedure; (2) allow drivers to opt out via email; (3) provide drivers with the contact information for plaintiffs' counsel; and (4) submit another round of proposed documents for the Court's review. *See generally id.*, Ex. H.

Uber filed a third round of corrective notices, a revised Licensing Agreement, and a revised Rasier Agreement.[4] RJN, Ex. I. The district court made yet another series of edits before finally approving the documents and directing Uber to "issue the documents, as corrected." *Id.*, Ex. J. Finally, on or about June 21, 2014, Uber rolled out the court-approved Licensing Agreement (the "2014 Licensing Agreement") and Rasier Agreement (the "2014 Rasier Agreement")

---

[4] Although Rasier was not (and is not) a defendant in *O'Connor*, Uber submitted a revised Rasier Agreement to ensure that this agreement was also "in conformity with the Court's orders." RJN, Ex. I at 3.

16

(together, the "2014 Agreements"), using the same procedure it had used for the 2013 Licensing Agreement. *See* ER 140.

### F. The 2014 Agreements

The Arbitration Provisions in the 2014 Agreements have (1) delegation clauses; (2) Waiver Provisions; (3) cost-allocation provisions; and (4) opt-out provisions that are substantially similar (though not identical) to those in the 2013 Licensing Agreement. ER 156-59 (2014 Licensing Agreement §§ 14.3.i, 14.3.v, 14.3.vi, 14.3.viii); ER 177, 179-80 (2014 Rasier Agreement Arbitration Provision §§ i, v, vi, viii). The only material differences between the 2014 Agreements and the 2013 Licensing Agreement are the following:

- Before being presented with the 2014 Agreements and a renewed opportunity to opt out, drivers received a two-page, court-approved "advance notice" advising them of the Arbitration Provision. RJN, Ex. J.

- Simultaneous with the rollout of the 2014 Agreements, drivers received a two-page, court-approved "corrective notice" with the same information contained in the "advance notice." RJN, Ex. J.

- The first page of the 2014 Agreements, in a bolded, capitalized, over-sized, stand-alone message, directs drivers to the Arbitration Provision and advises drivers that they may opt out of arbitration by following the opt out procedure

17

described therein.  ER 143 (2014 Licensing Agreement at 1); ER 166 (2014 Rasier Agreement at 1).

• The Arbitration Provision in the 2014 Agreements again provides drivers with virtually the same information contained in both the court-approved "advance notice" and "corrective notice."  ER 154 (2014 Licensing Agreement § 14.3); ER 176-77 (2014 Rasier Agreement at 11-12).

• The opt-out provision in the 2014 Agreements is bolded.  ER 158-59 (2014 Licensing Agreement § 14.3.viii); ER 180 (2014 Rasier Agreement at 15).

• The Arbitration Provision in the 2014 Agreements permits drivers to opt out of arbitration in four ways—by sending (1) an email to optout@uber.com; or by delivering Uber a letter via (2) hand delivery; (3) U.S. mail; or (4) "any nationally recognized delivery service (e.g., UPS, Federal Express, etc.)."  ER 158-59 (2014 Licensing Agreement § 14.3.viii); ER 180 (2014 Rasier Agreement at 15).

It is undisputed that many drivers opted out of the Arbitration Provision in the 2014 Agreements.  *See* Consolidation Opp'n at 6-7, *Mohamed v. Uber Techs., Inc.*, No. 15-16178, ECF No. 10 (9th Cir.); *see also* RJN, Ex. K ¶ 5 (ECF No. 277-15 at 2) ("[I]t appears that . . . 269 drivers timely opted out of the arbitration clause in the state of California.").

18

### G. The *Mohamed* and *Gillette* Actions

On November 24, 2014, a former driver filed a putative class action against Uber, captioned *Mohamed v. Uber Technologies, Inc.*, 3:14-cv-05200-EMC, alleging that Uber and a background screening company had procured or obtained consumer reports of drivers without providing advance notice, obtaining authorization to do so, or providing drivers with copies of their consumer reports, in violation of FCRA, the California Investigative Consumer Reporting Agencies Act ("ICRAA"), and Massachusetts law. ER 243-60.

On November 26, 2014, another former driver filed a putative class action against Uber, captioned *Gillette v. Uber Technologies, Inc.*, 3:14-cv-05241-EMC. ER 263. Gillette alleged (similar to the *Mohamed* plaintiff) that Uber had violated FCRA, ICRAA, and California Civil Code § 1786 *et seq*. ER 221. The named plaintiff also asserted a representative claim under PAGA, based on alleged violations of various provisions of the California Labor Code. Specifically, the *Gillette* plaintiff alleged that Uber misclassified drivers as independent contractors (rather than employees), failed to provide drivers with prompt wage payments, meal and rest periods, itemized wage statements, expense reimbursements, and gratuities, and violated California minimum wage and overtime laws. ER 234-35.

### H. The District Court's Order Denying Uber's Motions to Compel Arbitration in *Mohamed* and *Gillette*

Uber filed a motion to compel arbitration in *Gillette* on the basis that the named plaintiff was subject to the Arbitration Provision in the 2013 Licensing Agreement—*i.e.*, the Arbitration Provision that existed *before* the court rewrote Uber's Licensing Agreement in *O'Connor*. ER 218. Uber also filed a motion to compel arbitration in *Mohamed* on the basis that the named plaintiff was subject to the Arbitration Provision in the 2014 Agreements—*i.e.*, the revised Arbitration Provision as rewritten by the court in *O'Connor*. ER 183. Given the overlap between the motions to compel arbitration in *Gillette* and *Mohamed*, the district court ordered that the briefing and hearing on Uber's motions to compel be consolidated. ER 269, 287.

Following briefing and argument, the district court issued a single order (the "Arbitration Order") denying Uber's motions to compel arbitration in both *Gillette* and *Mohamed*. *See* ER 1-70. The district court denied Uber's motions based on its belief that the court (rather than an arbitrator) has the authority to determine the enforceability of the Arbitration Provisions and because, in the district court's view, the Arbitration Provisions in all three agreements are unconscionable. ER 1-70. Specifically, the district court found as follows:

20

- <u>Delegation Clause</u>:   The district court acknowledged that the delegation clause clearly and unmistakably delegates gateway arbitrability issues to an arbitrator.  *See* ER 16 ("Plaintiffs do not appear to contend that the language of the delegation clauses itself is ambiguous, and such an argument would be a tough sell.").   And it found that the "the Supreme Court [has] recognized that very similar language to that utilized in the delegation clauses here satisfies the 'clear and unmistakable' standard."  ER 16 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).  Yet the district court claimed to be unable to reconcile the delegation clause with (1) a venue clause and (2) a provision granting courts the authority to determine the validity of the class action and PAGA waiver contained in the Arbitration Provision.  ER 17-20.

- <u>Procedural Unconscionability</u>:  The district court concluded that the Arbitration Provisions are procedurally unconscionable, even though drivers had an opportunity (and in the case of the 2014 Agreements, a renewed opportunity) to opt out of arbitration, and even though hundreds of drivers did opt out.  ER 24-27, 32-40, 41-42, 61-62.  The court recognized that three Ninth Circuit decisions, including a 2013 *en banc* decision—*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir.

21

2002)—held that a meaningful opportunity to opt out precludes a finding of procedural unconscionability, yet refused to follow these precedents because of its belief that they represent "an inaccurate picture of California law." ER 36.

With respect to the 2014 Agreements in particular, the district court found procedural unconscionability to be an "extremely close question." ER 40. But—despite the fact that the district court itself participated in the drafting and rollout of the 2014 Agreements—the court concluded that the Arbitration Provisions in the 2014 Agreements are procedurally unconscionable based on the court's belief that drivers who use the Uber App are "lower-level laborer[s]," are "likely subject to . . . economic pressures," and "may feel pressure to appease their putative employer" by agreeing to arbitrate their claims. ER 39.

- Substantive Unconscionability: The district court concluded that the PAGA waiver in the Arbitration Provision renders all three Agreements substantively unconscionable under the California Supreme Court's decision in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014), even though most courts have held that the FAA preempts *Iskanian* and its progeny. *See* ER 43-49, 59-60, 62-63. In the alternative, the district court concluded that the Arbitration Provision in the 2013 Licensing Agreement (but not the Arbitration Provision in the 2014 Agreements) is "permeated" with unconscionability and thus

22

unenforceable because it (i) provides that arbitration costs may be apportioned between the parties if compatible with applicable law; (ii) carves out IP claims from arbitration; (iii) permits Uber to modify the arbitration agreement; and (iv) contains a confidentiality provision. ER 53-61.

## I.     Subsequent District Court Findings Pertaining To The Arbitration Provisions.

In a subsequent ruling granting, in part, Uber's motion to stay the *Mohamed* proceedings pending appeal of the Arbitration Order, the district court acknowledged the vulnerability of its Arbitration Order on appeal, explaining that "[i]f the Ninth Circuit . . . adheres to *Ahmed*, *Najd*, and *Kilgore*, then [the district court's] procedural unconscionability finding is unlikely to survive appellate review, and the 2014 arbitration provisions would likely be enforced under California law." ER 72-73.

Meanwhile, in *O'Connor*, the district court granted, in part, and denied, in part, the named plaintiffs' motion for class certification, certifying only a limited class of drivers to determine whether they were misclassified as independent contractors rather than employees. RJN, Ex. L. As the district court explained, "certifying, noticing, and litigating a class on behalf of a large number of individuals who may later need to be excluded from the class [because their claims must be arbitrated] does not make sense" and defeats superiority under Rule

23

23(b)(3). *Id.* at 63 n.37. The district court further acknowledged that, contrary to the district court's statements in its Arbitration Order, a "reasonably sizeable portion of . . . drivers may not face . . . general economic pressure to assent to Uber's arbitration agreements" because they are not "economically dependent on Uber for their livelihoods." *Id.* at 62. Yet, instead of excluding from the class *all* drivers who signed arbitration agreements and class action waivers, the court differentiated between drivers based on *which* arbitration agreement they signed. The court *included* within the class drivers who are bound by the 2013 Arbitration Provision under the theory that the 2013 Arbitration Provision is unconscionable as to all drivers across the board, without regard to their individual circumstances, and is so clearly unenforceable that there is no risk this Court will overturn the district court's decision. *Id.* at 63-64. But the court *excluded* from the class drivers who are bound by the 2014 Arbitration Provision because, in the district court's words, "there is a chance that the Ninth Circuit might reverse [the Arbitration Order]" with regard to the 2014 Arbitration Provision. *Id.* at 63.

## STANDARD OF REVIEW

An order denying a party's motion to compel arbitration is reviewed *de novo*. *See Kilgore v. Keybank Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) (citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008) (citation omitted). This *de novo* review must be undertaken "with a

healthy regard for the federal policy favoring arbitration." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

## SUMMARY OF THE ARGUMENT

Uber's 2013 and 2014 Arbitration Provisions are valid, binding, and enforceable. This Court should compel plaintiffs Gillette and Mohamed to arbitrate their claims, as they agreed to do.

I. Under binding Ninth Circuit precedents, including an en banc decision from 2013, the Arbitration Provisions *cannot* be procedurally unconscionable because they contain a meaningful opportunity for drivers to opt out of arbitration—a contractual right that hundreds of drivers exercised. *See Kilgore*, 718 F.3d at 1059 (holding that an arbitration provision is not procedurally unconscionable if it "allows [signatories] to reject arbitration" through an opt-out procedure). For that reason alone, the agreements are enforceable; this Court need not decide any other issue to resolve these appeals.

II. If this Court finds the Arbitration Provisions to be procedurally unconscionable (which it should not), the agreements are still enforceable because they are not substantively unconscionable—that is, nothing in the agreements is "so one-sided as to 'shock the conscience.'" *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) ("*Pinnacle*"). Each of

25

the provisions that the district court identified as substantively unconscionable—the cost-sharing provision, the confidentiality clause, the IP carve-out, the modification clause, and the PAGA waiver—has been upheld by this Court or other courts on numerous occasions. Moreover, any or all of those provisions could have been severed from the remainder of the Arbitration Provisions if necessary, in accordance with the "strong legislative and judicial preference" in California for "sever[ing] [an] [unconscionable] term and enforc[ing] the balance of the agreement." *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 122 (2000)).

III. As an alternative to the above arguments, this Court can resolve these appeals by enforcing the delegation provision contained in the Arbitration Provisions and allowing the arbitrator to determine whether the agreements are unconscionable. The district court correctly found that the language of the delegation provision evidences a "clear and unmistakable" intent to arbitrate gateway issues such as arbitrability, yet inexplicably refused to adhere to the provision. ER 16-23. The district court should have enforced the delegation provision and compelled plaintiffs to arbitrate questions of arbitrability.

26

For all of these reasons, and those discussed more fully below, the Arbitration Order should be reversed.

## ARGUMENT

The district court's order denying Uber's motions to compel arbitration contravenes the "liberal federal policy favoring arbitration," *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), and instead reflects the very "judicial hostility to arbitration" that the FAA was meant to counteract. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013). The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is [one of] the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25; *see also Concepcion*, 131 S. Ct. at 1749 ("Our cases place it beyond dispute that the FAA was designed to promote arbitration."). Applying these principles, this Court should do what the district court failed to do: "honor [the] parties' expectations" and "enforce [the 2013 and 2014 Arbitration Provisions] according to their terms . . . ." *Concepcion*, 131 S. Ct. at 1745, 1752.

27

## I. The Arbitration Provisions Cannot Be Procedurally Unconscionable Because Drivers Could, And Did, Opt Out Of Arbitration.

Under California law, a court may find that an agreement is procedurally unconscionable only when "oppression or surprise [exist] due to unequal bargaining power." *Pinnacle*, 55 Cal. 4th at 246. "The oppression component arises from . . . an absence of . . . a meaningful choice on the part of the weaker party." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005). Thus, the *existence* of a meaningful choice to modify or reject an arbitration agreement is fundamentally incompatible with, and thus precludes, a finding of procedural unconscionability. *See id.* at 1320; *see also Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 809 (2006) ("[T]here can be no 'oppression' when [a] customer has meaningful choices.") (citing *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768 (1989)); *Smith v. Ford Motor Co*., 462 F. App'x 660, 663-64 (9th Cir. 2011) (finding no procedural unconscionability because plaintiff "was presented with a meaningful choice").

This Court—on three occasions, including in a 2013 en banc decision—has held that a meaningful opportunity to opt out of an arbitration agreement *precludes* a finding of oppression and *requires* enforcement of the arbitration agreements. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002);

28

*City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).[5]  In *Ahmed*, for

example, a case in which an employer sought to compel arbitration of a former

employee's claims, this Court held that the arbitration agreement in question was

"not . . . a contract of adhesion"—and that the "case lack[ed] the necessary element

of procedural unconscionability"—because the employee had an "opportunity to

opt-out of the [defendant's] arbitration program" by mailing in an opt-out form.

*Ahmed*, 283 F.3d at 1199.  Similarly, in *Kilgore*, an en banc panel of this Court

held that a putative class of student-borrowers could not show that their lender's

arbitration agreement was procedurally unconscionable because the "arbitration

clause allow[ed] [the] students to reject arbitration within sixty days of signing"

the agreement.  *Kilgore*, 718 F.3d at 1059.[6]

---

[5]  *Accord Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007) ("[I]f an employee has a meaningful opportunity to opt out of the arbitration provision . . . and still preserve his or her job, then it is not procedurally unconscionable."); *Hoffman v. Citibank (South Dakota) N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008) ("We have held that providing a 'meaningful opportunity to opt out' can preclude a finding of procedural unconscionability."); *cf. Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (the "'quintessential procedural unconscionability' [is] where 'the terms of the [arbitration] agreement [are] presented on a take it or leave it basis . . . with no opportunity to opt out'") (citation and internal quotation marks omitted).

[6]  Other circuit courts agree.  For example, in *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634 (7th Cir. 1999), the Seventh Circuit enforced an employer's arbitration agreement and compelled a former employee into arbitration because the parties' arbitration agreement contained an opt-out provision and the

29

The present appeals fall squarely within this binding Ninth Circuit case law. It is undisputed that drivers who accepted the 2013 and 2014 Licensing Agreements could opt out of arbitration within 30 days of accepting the agreement, and that drivers were informed they would face no adverse consequences should they elect to opt out. *See* ER 212 (2013 Licensing Agreement § 14.3.viii ("Arbitration is not a mandatory condition of your contractual relationship with Uber."); *id.* (2013 Licensing Agreement § 14.3.viii ("You will not be subject to retaliation if You . . . opt-out of coverage under this Arbitration Provision.")); ER 143 (2014 Licensing Agreement at 1 ("**IF YOU DO NOT WANT TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION . . . .**")); ER 158 (2014 Licensing Agreement § 14.3.viii ("**Arbitration is not a mandatory condition of your contractual relationship with Uber**.")). It is further undisputed that hundreds of drivers *did*, in fact, opt out of Uber's Arbitration Provisions. *See* Consolidation Opp'n at 6-7, *Mohamed v. Uber Techs., Inc.*, No. 15-16178, ECF No. 10 (9th Cir.); RJN, Ex. M at 7-8; *supra* at 13 n.3.

---

employee was thus "free not to arbitrate; she was given a choice and she chose—by not signing the opt-out provision—to be bound by the [arbitration agreement]." *Michalski*, 177 F.3d at 636.

The district court acknowledged that *Kilgore*, *Najd*, and *Ahmed* all support Uber's argument and stand for the proposition that a meaningful right to opt out precludes a finding of procedural unconscionability:

> Uber argues that the existence of a meaningful right to opt-out . . . necessarily renders those [arbitration] clauses . . . procedurally conscionable as a matter of law, citing [*Ahmed*, *Najd*, and *Kilgore*] . . . . **It cannot be denied that each of the cited decisions stand for the precise proposition of law that Uber advocates.**

ER 34 (emphasis added). Yet the district court nevertheless refused to follow these binding Ninth Circuit decisions, expressing instead its disagreement with this Court's holdings. ER 36 ("*Kilgore* presents an inaccurate picture of California law"). In the district court's view, the en banc Ninth Circuit failed to account for *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007)—an off-point and since-overturned state-court decision issued six years *before* this Court's en banc *Kilgore* ruling. *See* ER 36.

Respectfully, the district court was required to follow binding circuit precedent even if it disagreed with it. *See Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided."); *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (the Ninth Circuit's interpretation of state law is binding "in the absence of any *subsequent*

31

indication from the California courts that [its] interpretation was incorrect")
(emphasis added); *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009)
(same). And this Court is required to follow the same precedent. *See Unites States
v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir. 2009); *see also United States v.
Maybusher*, 735 F.2d 366, 371 n.1 (9th Cir. 1984) ("[E]n banc panels . . . are
binding on three-judge panels."); *Barapind v. Enomoto*, 400 F.3d 744, 751 n.8 (9th
Cir. 2005) (en banc). For that reason alone, this Court should reverse the district
court and compel arbitration.[7]

In any event, *Gentry* is inapplicable here for several reasons. In *Gentry*, the
Court held that the employment arbitration agreement at issue was "not entirely
free from procedural unconscionability" because the employer provided its
employee with a dispute resolution handbook that "was markedly one-sided" in the

---

[7] Notably, since *Gentry* was issued nearly a decade ago, federal courts in
California routinely have followed the *Kilgore*, *Najd*, and *Ahmed* holdings
regarding procedural unconscionability. *See Mill v. Kmart Corp.*, 2014 WL
6706017, at *5-6 (N.D. Cal. Nov. 26, 2014); *Mendoza v. Ad Astra Recovery
Servs. Inc.*, 2014 WL 47777, at *5 (C.D. Cal. Jan. 6, 2014); *Velazquez v. Sears,
Roebuck & Co.*, 2013 WL 4525581, at *6 (S.D. Cal. Aug. 26, 2013); *Hodsdon
v. Bright House Networks, LLC*, 2013 WL 1091396, at *5 (E.D. Cal. Mar. 15,
2013); *King v. Hausfeld*, 2013 WL 1435288, at *8 (N.D. Cal. Apr. 9, 2013);
*Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, at *6 (E.D. Cal. Dec. 21,
2011); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002-03 (N.D. Cal.
Sept. 23, 2011); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165, at *4-6
(N.D. Cal. Apr. 11, 2011); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263,
1270 (C.D. Cal. 2008); *Swarbrick v. Umpqua Bank*, 2008 WL 3166016, at *4-5
(E.D. Cal. Aug. 5, 2008).

way it portrayed arbitration—the handbook "touted the virtues of arbitration" under headings like "WHY ARBITRATION IS RIGHT FOR YOU AND CIRCUIT CITY," yet failed to mention the "significant disadvantages" of the arbitration agreement at issue. *Gentry*, 42 Cal. 4th at 470-72. And because the employer made it "unmistakably clear that [it] preferred that the employee participate in the arbitration program," the employer was in a unique "position to pressure employees to choose its favored option." *Id.* at 472 & 472 n.10; *see also id.* at 472 (there was "no doubt about [the employer's] preference" for arbitration). Indeed, the *Gentry* court expressed doubt that *any* employees in the plaintiff's position "would have felt free to opt out," finding it likely that they "felt at least some pressure not to opt out of the arbitration agreement." *Id.* at 471-72.

By contrast, there has been no finding in this case that Uber "touted the virtues of arbitration" or made it "unmistakably clear that [it] preferred" arbitration, nor any finding that Uber "pressur[ed] [drivers] to choose [arbitration]." *Gentry*, 42 Cal. 4th at 470, 472. To the contrary, Uber advised drivers that "[a]rbitration [was] not a mandatory condition of [their] contractual relationship with Uber" and "[i]f [drivers] [did] not want to be subject to [the] Arbitration Provision, [they] may opt out . . . ." ER 212 (2013 Licensing Agreement § 14.3.viii); *id.* ("You will not be subject to retaliation if You . . . opt-

33

out of coverage under [the] Arbitration Provision.”); *id.* (advising drivers they have a “right to consult with counsel . . . concerning [the] Arbitration Provision”).  And there is no question that drivers felt empowered to opt out because many, in fact, did just that.  *See* Consolidation Opp’n at 6-7, *Mohamed v. Uber Techs., Inc.*, No. 15-16178, ECF No. 10 (9th Cir.); RJN, Ex. M at 7-8; *supra* at 13 n.3.  Thus, *Gentry* is inapplicable.  *See* ER 39 (holding that “[a] number of factual distinctions could remove this case from *Gentry*’s ambit”).

The district court also held that *Kilgore* does not support Uber’s argument with respect to the 2013 Arbitration Provision because, in the district court’s view, the opt-out provision in that agreement was “illusory” and “not conspicuous or ‘meaningful.’”  *See* ER 76.[8]  But the two reasons the district court provided for that conclusion are plainly wrong:

First, according to the district court, the opt-out provision was “buried in the contract . . . [and] not in any way set off from the small and densely packed text surrounding it.”  ER 25.  But it was not “buried”; rather, it was set forth in a separate and clearly labeled section of the Licensing Agreement with an underlined

---

[8]  By contrast, the district court expressly held that the opportunity to opt out of the 2014 Arbitration Provision was “meaningful,” and yet it *still* held that the agreement was procedurally unconscionable.  ER 33 (“[T]he 2014 contracts provide drivers a meaningful opportunity to opt-out of the arbitration provision . . . .”)).

heading entitled "Your Right to Opt Out Of Arbitration," and the opt-out deadline was emphasized in boldface, explaining that "the signed writing **must be post-marked within 30 days of the date this Agreement is executed by you**." ER 212 (2013 Licensing Agreement § 14.3.viii). That is no different from the opt-out provision in the arbitration agreement this Court upheld in *Kilgore*. *See Kilgore*, 718 F.3d at 1059 (finding no procedural unconscionability where the opt-out provision was not "buried in fine print in the Note, but was instead in its own section, clearly labeled, in boldface"). Moreover, the California Supreme Court recently held that the FAA preempts state-law rules that would require a party to draw special attention to an arbitration provision.[9] *Sanchez v. Valencia Holding, Co.*, 61 Cal. 4th 899, 914 (2015) (holding that a party has "no obligation to highlight [an] arbitration clause [in] its contract" and that "[a]ny state law imposing such an obligation would be preempted by the FAA"). Thus, the district

---

[9] Similarly, numerous courts have held that the use of a uniform font in an arbitration agreement weighs *against* a finding of procedural unconscionability. *See, e.g., Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1571 (2009) (arbitration provisions were "not hidden" because they were "in the same typeface and font size as the rest of the [contract's] provisions"); *Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1143 (C.D. Cal. 2009) (same); *Gilbert v. Bank of Am*., 2015 WL 1738017, at *5 (N.D. Cal. Apr. 8, 2015) (delegation clause was not "hidden," but was "in the same font and type size as the other provisions of the Arbitration Provision"); *Hall v. Fedex Freight, Inc*., 2014 WL 3401386, at *14 (E.D. Cal. July 11, 2014) (there was "no showing of undue surprise or oppression" because provision was "in the same font and type as the rest of the [contract]").

court's rationale for ignoring *Kilgore*—purportedly based on California law—has now been repudiated by the California Supreme Court.[10]

Second, the district court found the 2013 opt-out provision to be "meaningless" because it required drivers to submit their opt-out forms by overnight mail or hand delivery, rather than using email. ER 25-26. But, ubiquitous as email has become, there is no requirement—and no Ninth Circuit or California authority holding—that a party must be able to invoke a contractual right via email in order for that right to be meaningful and not illusory. To the contrary, courts routinely order class members to serve opt-out notices by overnight delivery or certified mail, in part because those delivery methods preserve "documentary corroboration of a class member's efforts to opt out" while imposing only "minimal cost and effort." *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 1048073, at *1, *5 (S.D.N.Y. May 5, 2005); *accord, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (rejecting argument that service of objections to a class settlement by "certified mail, overnight mail, or by hand" was too "burdensome" for class members). As *Sanchez* makes clear, the district court's imposition of special opt-out requirements

---

[10] For exactly the same reasons, the Arbitration Provisions were not a "surprise" to drivers, despite what the district court held. ER 33.

in the arbitration context is contrary to California law and preempted by the FAA. *Sanchez*, 61 Cal. 4th at 914.

In any event, it is undisputed that many drivers *did* utilize the opt out procedures in *both* the 2013 and 2014 Arbitration Provisions to opt out of arbitration, *see supra* at 13 n.3, 30—so it simply cannot be the case that the opt-out provision in the 2013 Licensing Agreement was "illusory" and "meaningless," as the district court held. Thus, *Kilgore* applies equally to the 2013 and 2014 Arbitration Provisions, precluding a finding of procedural unconscionability.

In short, a meaningful opportunity to opt out of an arbitration agreement—which both the 2013 and 2014 Arbitration Provisions provided, as evidenced by the hundreds of drivers who successfully opted out of arbitration—means there can be no unconscionability under binding Ninth Circuit precedent.

## II. Neither The Cost-Splitting Provision, Nor Any Other Provision, Renders The Arbitration Agreements Substantively Unconscionable.

Because Uber's arbitration agreements are not procedurally unconscionable, this Court should not reach the question of substantive unconscionability. *See Kilgore*, 718 F.3d at 1058 (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("A contract provision is unenforceable under California law [only] if it is *both* procedurally and substantively unconscionable.") (emphasis added). If this Court does turn to substantive unconscionability, however, it should find that

37

nothing in the Arbitration Provisions is substantively unconscionable. *See Pinnacle*, 55 Cal. 4th at 246 ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience.") (internal quotation marks omitted). Alternatively, it should sever any substantively unconscionable provisions and enforce the remainder of the Arbitration Provisions. *Roman*, 172 Cal. App. 4th at 1477 ("[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.").

### A. The Cost-Splitting Provision Is Not Unconscionable.

The district court found the 2013 and 2014 Arbitration Provisions substantively unconscionable based on a cost-sharing provision that provides as follows:

> [I]n all cases where required by law, Uber will pay the Arbitrator's and arbitration fees. If under applicable law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

ER 158, 212 (§ 14.3.vi). According to the district court, this provision means that Plaintiffs would "be subject to hefty fees of a type they would not face in court if they [were] forced to arbitrate," and that they "would be unable to access the arbitral forum . . . if the fee-splitting clause [were] enforced." ER 29, 40.

38

In reaching this holding, the district court relied primarily on *Armendariz*, 24 Cal. 4th 83, which precludes mandatory employment arbitration agreements that would "require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Id.* at 110-11. But *Armendariz* applies only in the context of "mandatory employment arbitration agreements"—not, as here, where Plaintiffs could opt out of the Arbitration Provisions (as many drivers did). *Id.* at 103 n.8; *see also Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 677 (2010) (a "mandatory employment arbitration agreement" is one that "an employer imposes on the employee as a condition of employment"); *Swarbrick v. Umpqua Ban*k, 2008 WL 3166016, at *4 (E.D. Cal. Aug. 5, 2008) (finding that *Armendariz* was inapplicable where plaintiffs had an "opportunity to negotiate or reject the arbitration clauses"). For that reason alone, the district court erred.

In any event, the *Armendariz* rule, which imposes a special burden on arbitration agreements—and *only* arbitration agreements—is preempted by the FAA. *See Concepcion*, 131 S. Ct. at 1746 (the FAA does not permit agreements to arbitrate to be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not . . .

39

invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.").  The district court inexplicably ruled that Uber waived this argument by not asserting it.  ER 28.  But Uber made this *exact* argument in its motions to compel arbitration, arguing as follows:   "The restrictions established by *Armendariz* fall within this category of restrictions precluded by the FAA. . . . *Concepcion* and *Marmet* make clear[] that such imposed limitations run afoul of the FAA."  ER 184-85, 219-20.[11]

Also incorrect is the district court's conclusion that Plaintiffs would be subject to "hefty fees of a type they would not face in court" if forced to arbitrate. ER 29.  *Armendariz* applies only if arbitration agreements are deemed to be *mandatory employment* agreements, rather than non-mandatory provisions contained within software licensing agreements that are signed by independent

---

[11]  In any event, this Court may exercise its discretion "to consider a purely legal question" where, as here, the relevant record is "fully developed."  *United States v. Northrop Corp*., 59 F.3d 953, 957 n.2 (9th Cir. 1995).  A number of district courts have already called into question *Armendariz*'s continuing validity.  *See, e.g.*, *James v. Conceptus, Inc*., 851 F. Supp. 2d 1020, 1033 (S.D. Tex. 2012) (finding the *Armendariz* rule "in serious doubt following *Concepcion*" and concluding that "it appears [to be] preempted"); *Beard v. Santander Consumer USA, Inc.*, 2012 WL 1292576, at *9 (E.D. Cal. Apr. 16, 2012) *report & rec. adopted*, 2012 WL 1576103 (E.D. Cal. May 3, 2012) ("The general *Armendariz* rule has been criticized following the Supreme Court's ruling in *Concepcion*."); *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 151 n.9 (D.D.C. 2007) ("Application of the *Armendariz* rule might also be inconsistent with the FAA, which preempts 'state laws applicable only to arbitration provision.'").

contractors, as Uber contends. *Armendariz*, 24 Cal. 4th at 110-11. But, in any event, even if the agreements at issue are mandatory employment agreements, then Plaintiffs' claims would be governed by the JAMS Minimum Standards of Procedural Fairness. *See* ER 157, 210 (§ 14.3.iii); RJN, Ex. N at 2 ("JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards."). According to those Standards,

> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs . . . . ***The only fee that an employee may be required to pay is JAMS' initial Case Management Fee***. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services.

RJN, Ex. N at 3 (emphasis added). According to Plaintiffs' own evidence, the JAMS initial Case Management fee is only $400, *see* ER 113, the *same* amount as the initial court filing fee paid by Plaintiffs in these lawsuits. ER 263, 280 ("Filing fee $400").

Furthermore, even if *Armendariz* applied here, it is "a rule of contract construction, not contract invalidation." *Marshall v. Pontiac*, 287 F. Supp. 2d 1229, 1234 (S.D. Cal. 2003). California law and the FAA require courts to interpret the fee provision in a manner so as to "render[] it lawful." *Pearson*, 48

Cal. 4th at 682.[12] Thus, if the district court believed the cost-sharing provision to

be unconscionable, it should have interpreted the Arbitration Provisions to require

Uber to bear all arbitration costs. The fee provision itself expressly contemplates

this result. *See* ER 158, 212 (§ 14.3.vi ("[I]n all cases where required by law, Uber

will pay the Arbitrator's and arbitration fees.")).[13]

---

[12] *See also Pearson*, 48 Cal. 4th at 682 ("When an arbitration provision is
ambiguous, we will interpret that provision, if reasonable, in a manner that
renders it lawful, both because of our public policy in favor of arbitration as a
speedy and relatively inexpensive means of dispute resolution, and because of
the general principle that we interpret a contractual provision in a manner that
renders it enforceable rather than void."); *Collins v. Diamond Pet Food
Processors of Cal., LLC*, 2013 WL 1791926, at *6-7 (E.D. Cal. Apr. 26, 2013)
(enforcing arbitration agreement allowing attorney's fees to be apportioned to
prevailing party because it "[was] explicitly limited by [an] 'in accordance with
law' provision"); *Appelbaum v. AutoNation, Inc.*, 2014 WL 1396585, at *9
(C.D. Cal. Apr. 8, 2014) (arbitration agreement was not unconscionable because
"if California law would require Defendants to assume the costs of the
arbitration to avoid unconscionability, that law would apply"); *Mill v. Kmart
Corp.*, 2014 WL 6706017, at *4-6 (N.D. Cal. Nov. 26, 2014) (arbitration
agreement satisfied *Armendariz* because it required employer to pay fees
necessary "under state law"); *Saincome v. Truly Nolen*, 2011 WL 3420604, at
*9 (S.D. Cal. Aug. 3, 2011) (no substantive unconscionability arose from
arbitration provision that provided that arbitrator would assess costs or
attorney's fees "in accordance with applicable law" because arbitrator would
construe provision to avoid violating FLSA).

[13] In addition, it is undisputed that Uber offered to pay Plaintiffs' arbitration costs
before the district court issued its order denying the motion to compel
arbitration. ER 92-96. This fact renders moot any claim that Plaintiffs could
not effectively vindicate their rights in the arbitral forum. *See, e.g.*, *Muriithi v.
Shuttle Express, Inc.*, 712 F.3d 173, 182-83 n.10 (4th Cir. 2013) (defendant's
offer to pay all arbitration costs before district court rules on enforceability of

In the alternative, the court should have severed the cost-sharing provision instead of declaring the entire Arbitration Provisions unenforceable. *See Roman*, 172 Cal. App. 4th at 1477 (a fee-sharing provision, to the extent it may be deemed unconscionable, should be severed from the arbitration agreement); *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 738 (2013) (rejecting argument that a fee provision in an arbitration agreement was substantively unconscionable because "that term could easily have been severed from the contract").[14] Indeed, "the

---

arbitration clause moots plaintiff's claim of prohibitive costs in arbitration process); *EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 566-67 (8th Cir. 2007) (same); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 & n.3 (5th Cir. 2004) (same); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) (same); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002) (remanding case to permit defendant the opportunity to "offer to pay all of the arbitrator's fees"). Plaintiffs "cannot plead prohibitive costs on the one hand and then reject [Uber's] offer to pay all costs when that offer is in accordance with the provisions of the Agreement." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 n.3 (7th Cir. 2003).

[14] *See also Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal. Aug. 15, 2012) (finding that fee-sharing provision was not unconscionable, but severing provision to avoid ambiguity); *Burgoon v. Narconon of N. Cal.*, 2015 WL 5071982, at *13 (N.D. Cal. Aug. 27, 2015) ("the 'taint' from the cost-splitting and confidentiality provisions" did not "permeate[] the arbitration agreements to such an extent that the purpose of the agreements—i.e., to arbitrate rather than litigate—was transformed"); *Ambler v. BT Ams. Inc.*, 964 F. Supp. 2d 1169, 1177 (N.D. Cal. 2013) (severing cost-splitting and attorney's fees provisions); *McIntosh v. Adventist Health/W. St. Helena Hosp.*, 2013 WL 968293, at *8-9 (N.D. Cal. Mar. 12, 2013) (cost-splitting provision was "easily severable" and did "not permeate the entire agreement").

strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Roman*, 172 Cal. App. 4th at 1477.[15]

### B. No Other Provision Is Substantively Unconscionable.

None of the other provisions identified by the district court is substantively unconscionable either. To the contrary, these very provisions have repeatedly been upheld by this Court or other courts as valid and enforceable.

*First*, the Arbitration Provision is not substantively unconscionable merely because it contains a confidentiality provision, which states as follows: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all Parties." ER 158, 212 (§ 14.3.vii). As the en banc Court in *Kilgore* held, enforceability of a confidentiality clause is a "matter distinct from the enforceability of [an] arbitration clause." *Kilgore*, 718 F.3d at 1058-59 n.9.

---

[15] Notably, the U.S. Supreme Court recently granted a petition for writ of certiorari in an employee misclassification lawsuit and agreed to decide whether the FAA preempts California law to the extent it has been erroneously construed by some courts to *disfavor* the severability of unconscionable provisions in arbitration agreements. *See MHN Gov't Servs., Inc. v. Zaborowski*, 2015 WL 3646800 (U.S. Oct. 1, 2015) (granting writ of certiorari to review *Zaborowski v. MHN Gov't Servs., Inc*., 601 F. App'x 461 (9th Cir. 2014)).

Moreover, numerous courts have upheld the validity of arbitration agreements with confidentiality provisions *identical* or *virtually identical* to the language found in the Arbitration Provision. *See, e.g.*, *Velazquez v. Sears, Roebuck, & Co.*, 2013 WL 4525581, at *5-6 (S.D. Cal. Aug. 26, 2013) (no substantive unconscionability in arbitration agreement with confidentiality provision virtually identical to the one contained in the Arbitration Provision).[16]

***Second***, the Arbitration Provision is not substantively unconscionable based on any supposed lack of "mutuality." ER 56-57. Mutual carve-outs for IP rights— like those at issue here—are not substantively unconscionable as a matter of law. *See, e.g., Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014); *see also Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1124 (N.D. Cal. 2014) (rejecting employee's claim that an arbitration agreement was unconscionable even though it "exclude[d] trade secret misappropriation claims

---

[16] *Accord Andrade v. P.F. Chang's China Bistro, Inc.*, 2013 WL 5472589, at *9 (S.D. Cal. Aug. 9, 2013) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder with the prior written consent of both parties") (citing *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 847 (N.D. Cal. 2012)); *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, no party or arbitrator(s) may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties").

from arbitration" because "[m]utuality . . . does not require an exactly even exchange of identical rights and obligations").[17]

Moreover, in addition to carving out intellectual property claims, the Arbitration Provisions also carve out claims that are far more likely to be asserted *against* Uber, such as employee benefit claims under the Employee Retirement Income Security Act, workers compensation claims, state disability insurance claims, and unemployment insurance benefit claims. ER 156-57, 210 (§ 14.3.i-ii). The Arbitration Provisions also *cover* claims more likely to be brought by Uber, such as claims for trade secrets, unfair competition, and "claims arising under the Uniform Trade Secrets Act." ER 156, 210 (§ 14.3.i). Courts—including the California Supreme Court in its recent *Sanchez* decision—have recognized that such *mutual* carve-outs are not unfairly one-sided and do not create substantive unconscionability. *See, e.g.*, *Sanchez*, 61 Cal. 4th at 921-22 (finding no substantive

---

[17] In addition, intellectual property carve-outs such as this one are not unconscionable because they serve a host of legitimate business reasons. *Armendariz*, 24 Cal. 4th at 117 (it is not "unfairly one-sided" for an employer "to impose arbitration on the employee" given "some reasonable justification" based on "business realities"). For example, a ruling from the Federal Circuit on the validity of a patent "can be a considerable asset for the patent holder in future licensing, enforcement and other commercial transactions." Anthony S. Volpe & Linda X. Shi, *What to Consider Before Agreeing to an IP Arbitration*, The Legal Intelligencer, Vol. 243 No. 35, at 2 (Feb. 22, 2011). And since arbitration proceedings only bind the actual parties to the arbitration and do not permit joinder of third parties, arbitration would frustrate any attempt to prosecute contributory or induced infringement of IP rights by third parties. *Id.*

unconscionability in an arbitration agreement that included a carve-out favoring defendant because another carve-out in the agreement favored plaintiff). And even if the IP carve-out were objectionable, the district court should have severed it. *See supra* at 43-44.

**Third**, the Arbitration Provision is not substantively unconscionable merely because it permits Uber to modify the terms and conditions of the agreement. ER 153, 208 (§ 12.1). This Court, earlier this year, expressly *rejected* the argument that a party's ability to unilaterally modify an arbitration agreement renders it unconscionable, because such provisions are always subject to the limits "'imposed by the covenant of good faith and fair dealing implied in every contract.'" *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir. 2015) (citation omitted). And even before *Ashbey*, "Ninth Circuit courts [had] a history of enforcing contracts containing change-in-terms provisions." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1176 (W.D. Wash. 2014); *see also Slaughter v. Stewart Enters., Inc.*, 2007 WL 2255221, at *10 (N.D. Cal. Aug. 3, 2007). California courts agree. *See, e.g., Serpa v. Cal. Sur. Inv., Inc*., 215 Cal. App. 4th 695, 708 (2013) ("[T]he implied covenant of good faith and fair dealing limits the

employer's authority to unilaterally modify [an] arbitration agreement and saves that agreement from being illusory and thus unconscionable.").[18]

**Fourth**, the representative action waiver (the "PAGA Waiver") contained in the Arbitration Provision is not substantively unconscionable under the California Supreme Court's decision in *Iskanian v. CLS Transportation, LLC*, 59 Cal. 4th 348 (2014), because *Iskanian*—by its own terms—applies only when a PAGA waiver contained within an arbitration agreement is a "condition of employment," which is not the case here. *Iskanian*, 59 Cal. 4th at 360. *But see Securitas Sec. Servs. USA, Inc. v. Superior Court,* 234 Cal. App. 4th 1109, 1120-23 (2015). The Arbitration Provision states, in unambiguous language, that: (1) arbitration is "not a mandatory condition of [drivers'] contractual relationship with Uber"; and (2) drivers would "not be subject to retaliation if [they] . . . opt[ed] out" of the Arbitration Provision. ER 158-59, 212 (§ 14.3.viii). Indeed, many drivers did opt out. *See supra* at 13 n.3, 30.[19]

---

[18] *See also 24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (2015); *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 176 (2015); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013).

[19] In any event, *Iskanian* and this Court's recent decision in *Sakkab v. Luxottica Retail North America*, 2015 WL 5667912 (9th Cir. Sept. 28, 2015), were wrongly decided because the *Iskanian* rule undermines the fundamental

The PAGA waiver contained in the 2014 Arbitration Provision also cannot be declared unconscionable in this case because Mohamed (the only plaintiff who signed the 2014 Arbitration Provision) does not assert a PAGA claim. *See Lee v. Am. Express Travel Related Servs., Inc.*, 348 F. App'x 205, 207 (9th Cir. 2009) ("Plaintiffs cannot satisfy the requirements of Article III because they have not yet been injured by the mere inclusion of these provisions in their agreements, nor is the threat of future harm from such provisions sufficiently imminent to confer standing.").[20]

Finally, even if *Iskanian* were applicable here, the Court should simply sever the PAGA Waiver in accordance with California's "strong legislative and judicial preference . . . to sever [an] offending term and enforce the balance of the

---

attributes of arbitration and is therefore preempted by the FAA. *See Concepcion*, 131 S. Ct. at 1747, 1753.

[20] *See also West v. Henderson*, 227 Cal. App. 3d 1578, 1588 (1991), *overruled on other grounds by Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1178 n.7 (2013); *Dauod v. Ameriprise Fin. Servs., Inc.*, 2011 WL 6961586, at *5 (C.D. Cal. Oct. 12, 2011) (where plaintiff asserts no PAGA claims, the question "whether a PAGA waiver taints the Agreement with illegality is not even a genuine issue in this case" and is "inapposite to the instant action").

[arbitration] agreement," *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010),[21] rather than invalidating the Arbitration Provision in its entirety.[22]

## III.  An Arbitrator Should Decide The Enforceability Of The Arbitration Provisions.

Finally, and in the alternative to the procedural and substantive unconscionability discussions above, this Court could dispose of this case by ordering enforcement of the parties' delegation clause, which clearly and unmistakably delegates most threshold questions of arbitrability to an arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

When making the determination as to whether there is "clear and unmistakable" evidence that the parties intended questions of arbitrability to be decided by an arbitrator, courts must "conduct[] a *facial and limited review*" of the

---

[21]  *Accord Armendariz*, 24 Cal. 4th at 124 ("If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance and restriction, then such severance or restriction are appropriate.").

[22]  The district court held that the Arbitration Provisions themselves make the PAGA Waiver non-severable.  ER 49-52, 62-63.  But the 2014 Arbitration Provision expressly allows for severability of the PAGA Waiver.  ER 158 (§ 14.3.v) ("If at any point this provision is determined to be unenforceable, the parties agree that this provision shall not be severable, *unless it is determined that the Arbitration may still proceed on an individual basis only*.") (emphasis added).  And both agreements contain other provisions expressly calling for severability.  ER 154, 209 (§ 14.1 ("If any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law.")).

agreement. *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, at *4 (N.D. Cal. May 4, 2005); *Bernal v. S.W. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, at *2 (N.D. Cal. May 7, 2014) (same); *see also Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40, 43 (6th Cir. 1985) ("The function of the court is . . . confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."). As such, courts routinely confine their analysis to the express language of the contract (and any arbitral rules incorporated therein) when determining whether parties—even "unsophisticated" parties—have manifested a "clear and unmistakable" intent to delegate threshold issues to an arbitrator. *See, e.g., Zenelaj v. Handybrook, Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015).[23]

As the district court found, the language of the delegation provision at issue here evidences a "clear and unmistakable" intent to arbitrate gateway issues such

---

[23] *See also Universal Prot. Serv., L.P. v. Superior Court*, 234 Cal. App. 4th 1128, 1141 (2015) (arbitration agreement incorporating AAA Rules evinced "clear and unmistakable" intent of security guard-employees); *Bernal*, 2014 WL 1868787, at *4 (enforcing delegation provision in lawsuit brought by "payday loan" customer against bank); *Ariza v. Autonation, Inc.*, 317 F. App'x 662, 663 (9th Cir. 2009) (reversing district court order denying auto lessor's motion to compel arbitration and finding that agreement clearly and unmistakably warranted delegation); *Chung v. Nemer PC*, 2012 WL 5289414, at *2 (N.D. Cal. Oct. 25, 2012) (granting employer's motion to compel arbitration with pro se employee pursuant to delegation clause and rejecting employee's argument that she "did not fully understand the [arbitration] agreement").

51

as arbitrability. *See* ER 16 ("Plaintiffs do not appear to contend that the language of the delegation clauses itself is ambiguous, and such an argument would be a tough sell."). Specifically, in a subsection of the Arbitration Provision entitled "How This Arbitration Provision Applies," the agreements mandate that the following matters must be decided by the arbitrator: "[D]isputes arising out of or relating to interpretation or application of this Arbitration Provision." ER 156, 210 (§ 14.3.i). Under *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010), this language is unambiguous in its mandate that the arbitrator, not the Court, should address any arguments that Plaintiffs may have regarding contract "valid[ity], irrevocab[ility], or enforceab[ility]."

Nevertheless, the district court refused to enforce the delegation provision because of the agreements' general jurisdictional reservation—a provision that is *not* a part of the Arbitration Provision. ER 182, 209-10 (§ 14.1 (reserving jurisdiction in "the state and federal courts located in the City and County of San Francisco, California")). But nothing about the general jurisdictional provision renders the Arbitration Provision's delegation clause ambiguous; just because the parties intended to delegate arbitrability disputes to an arbitrator as a *general* matter does not eliminate the need to identify the court that would have jurisdiction in the event a judicial proceeding becomes necessary. For example, a court

proceeding may be required to compel the parties to arbitration (as here) or to enforce an arbitral award. That is why the Arbitration Provision begins with the words "**Except as it otherwise provides**, . . . ." ER 156, 209-10 (§ 14.3.i). The Arbitration Provision reiterates this exception again just three paragraphs later, stating that the Licensing Agreement "is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, *except for* those claims and disputes which by the terms of [the] Agreement are expressly excluded from the Arbitration Provision." ER 156, 209-10 (§ 14.3.i (emphasis added)). Thus, when read as a whole, there is no ambiguity—the Arbitration Provision applies to the resolution of all disputes "that otherwise would be resolved in a court of law," including gateway issues related to the Arbitration Provision, "[e]xcept" certain disputes that are explicitly reserved for courts (which are then governed by the general jurisdictional provision set forth in Section 14.1).[24]

---

[24] For example, the Arbitration Provision includes an exception to the general delegation clause by permitting a party to "apply to a court of competent jurisdiction for temporary or preliminary injunctive relief" when "the award to which that party may be entitled may be rendered ineffectual without such provisional relief." ER 157, 211 (§ 14.3.iv). As another example, the 2013 Arbitration Provision (but not the 2014 Arbitration Provision) expressly states that "a court of competent jurisdiction and not . . . an arbitrator" must determine the enforceability of the Arbitration Provision's class action, collective action, and representative action waivers. ER 211 (§ 14.3.v).

The California Supreme Court has held that an arbitration provision with very similar features evinced a clear and unmistakable intent to refer threshold arbitrability issues to an arbitrator. In *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495 (2005), the Court rejected the claim that a separate service of suit clause requiring the defendants to "submit to the jurisdiction of a court of competent jurisdiction within the United States" created ambiguity. 36 Cal. 4th at 502. The Court found instead that the parties "clearly . . . intended . . . for all disputes to be settled in binding arbitration, even if other provisions, read in isolation, might seem to require a different result," and held that the provisions were harmonious because the service of suit clause applied whenever defendants needed "to compel arbitration or to enforce arbitral awards . . . ." *Id.* at 503; *accord Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004) ("No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award.").

Likewise, federal courts routinely hold that discrete references to "courts," like those in the 2013 and 2014 Agreements, do not render clear and unmistakable delegation clauses ambiguous. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) (finding a clear and unmistakable intent to delegate and

54

holding that it was "immaterial" that applicable arbitration rules stated that there could be "challenge[s] to [the arbitral tribunal's] jurisdiction [in] a court"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 879 (8th Cir. 2009) (a reference to "court costs" in a governing law provision did not conflict with a clear and unmistakable intent to delegate because "a party may seek to have the arbitrator's order confirmed, modified or vacated in a court . . . ."); *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, 2014 WL 10100283, at *4-5 (C.D. Cal. Nov. 26, 2014) (finding a clear and unmistakable intent to delegate, despite a provision stating that "a court [could] determine[] [whether] any provision of the [agreement] [was] invalid or unenforceable"); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720-21 (N.D. Ill. 2014).

As in *Boghos*, *Dream Theater*, *Oracle*, *Fallo*, *Anheuser-Bush*, and *Wal-Mart*, there is no ambiguity here. The Arbitration Provision states that an arbitrator must resolve *all* the parties' disputes, subject to specific carve-outs that preserve the parties' ability to compel arbitration and confirm arbitral awards in court.

**IV.    Non-Signatory Hirease May Compel Plaintiff Mohamed To Arbitration[25]**

The district court denied Hirease's joinder in Uber's motion to compel arbitration of Mohamed's claims solely because the court concluded that "none of Uber's arbitration agreements are enforceable against Mohamed[.]"  ER 69.  As argued above, the district court erred in so concluding, and Hirease may therefore enforce Uber's arbitration agreements against Mohamed.

Furthermore, Hirease is entitled under well-settled law to avail itself of Uber's arbitration agreements and compel arbitration of Mohamed's claims.  A non-signatory to an arbitration agreement may compel a signatory to arbitrate under the following circumstances:  (1) where an agency relationship is alleged to exist, *see, e.g., Thomas v. Westlake*, 204 Cal. App. 4th 605, 614 (2012); (2) where there is an "identity of interest" among the defendants, *see e.g., Jones v. Jacobson*, 195 Cal. App. 4th 1, 18 n.9 (2011); or (3) where the cause of action alleged against the non-signatory is "intimately founded in and intertwined with" the underlying contract obligations, *see Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009) (citation omitted).  Taking Mohamed's allegations as true for the sake of argument, each of the three circumstances above is present here.

---

[25] This section of the Joint Brief is submitted only on behalf of Appellant Hirease and is attested to only by Hirease's counsel.

First, Mohamed alleges that Hirease and Uber were each other's agents. ER 245-46 ("On information and belief, at all times mentioned herein, each named Defendant and DOES 1-50 were the employees, agents, or representatives of each other . . . ."). Therefore, Hirease may avail itself of its alleged agent/principal relationship with Uber and compel arbitration of Mohamed's claims.

Second, Mohamed cast Hirease and Uber as having identical interests by referring to the parties interchangeably throughout his Complaint. In particular, Mohamed defines "Defendants" to include Uber, Rasier, Hirease and unknown Doe defendants, and then uses this term indiscriminately throughout his allegations:

- "Plaintiff was deprived of any meaningful opportunity to review the information in the consumer report and discuss it with Defendants before they made the decision not to hire him … Defendants did not give meaningful consideration to Plaintiff's position on any such matter." ER 249;
- "Defendants' termination of Plaintiff deprived him of his livelihood and left him without an alternative means of providing for his family, including his seven children." ER 249;
- "Defendants Acted Willfully - Defendants knew or should have known their duties under M.G.L. c. 93 § 50 *et seq.* to maintain a CORI policy and to provide a copy of such policy to Plaintiff upon an adverse employment decision." ER 249;
- "The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Class members under M.G.L. c. 93 § 50 *et seq.*" ER 257.

Thus, Mohamed's allegations establish an "identity of interest" among the defendants. *Jones*, 195 Cal. App. 4th at 18 n.9

Finally, Mohamed's allegations of wrongdoing against Hirease are inextricably intertwined with his allegations against Uber. As master of his Complaint, Mohamed alleged a relationship between Uber and Hirease that gave rise to the circumstances on which he bases his claims. *See, e.g.*, ER 246 ("Hirease contracts with Uber and Rasier to provide background screening services, and Uber and Rasier make use of such information in hiring decisions."); *see also* ER 250 ("During the relevant period, Hirease provided and continues to provide consumer reports to Uber and Rasier under a service agreement."). As these examples show, Mohamed has blended his allegations regarding Hirease together with those regarding Uber, suggesting an intimate intertwinement between Uber and Hirease.

For each of these reasons, Mohamed should be compelled to arbitrate his claims against Hirease.

## CONCLUSION

For the reasons set forth above, Uber respectfully requests that the Court reverse the district court's Arbitration Order and find that the 2013 and 2014 Arbitration Provisions are binding and enforceable. Alternatively, this Court should hold that an arbitrator must decide the gateway issue of arbitrability.

Dated: October 21, 2015

Respectfully submitted,

  /s/ Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP

*Attorney for Defendants-Appellants Uber Technologies, Inc. and Rasier, LLC*

  /s/ Timothy Hix

SEYFARTH SHAW LLP

*Attorney for Defendant-Appellant Hirease LLC*

## STATEMENT OF RELATED CASES

Appellants are aware of the following related case: *O'Connor v. Uber Technologies, Inc.*, Ninth Circuit Appeal No. 14-16078, District Court No. 3:13-cv-03826-EMC.

Dated: October 21, 2015

*/s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.


*/s/ Timothy L. Hix*
Timothy L. Hix

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Court Rule 32-1 because it contains 13,915 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Undersigned counsel certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2010.

Dated: October 21, 2015

*/s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

*/s/ Timothy L. Hix*
Timothy L. Hix

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 21, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 21, 2015

_____*/s/ Theodore J. Boutrous, Jr.*_____
Theodore J. Boutrous, Jr.